UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JEROME K. PERDUM, SR.,

                           Plaintiff,

              -against-

FOREST CITY RATNER COMPANIES,
FIRST NEW YORK PARTNERS
MANAGEMENT, LLC, and ATLANTIC
CENTER FORT GREENE ASSOCIATES,

                           Defendants.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

11-CV-315 (PKC)

PAMELA K. CHEN, United States District Judge:

        Plaintiff Jerome K. Perdum, Sr. brings this action alleging violations of the Americans

with Disabilities Act ("ADA") and various State and local laws, based on the alleged denial of

disability access to a Pathmark grocery store located in the Atlantic Center Mall in Brooklyn,

New York.  Defendants Forest City Ratner Companies, First New York Partners Management,

LLC, and Atlantic Center Fort Greene Associates allegedly own, lease, and/or manage the

Pathmark store and Atlantic Center Mall.  Before the Court is Defendants' motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), seeking

dismissal of this action.  For the reasons stated below, Defendants' motion is GRANTED, and

Plaintiff's claims are dismissed.

*BACKGROUND*

I.      Relevant Factual History

        Plaintiff is a male resident of Brooklyn, New York, living in a four-story, walk-up

1

building that he and his wife own.  (Perdum Tr.[1] at 4:9–15, 6:9–13, 7:17–19.)  Plaintiff and his

wife live in the basement apartment, which is accessible two steps down from ground level.  (*Id.*

at 6:24–7:5, 7:20–8:2.)  There are three additional apartments in Plaintiff's building, one on each

floor.  (*Id.* at 7:6–11.)  Plaintiff "[o]n occasion[]" climbs the steps to get to the other floors in

order to "check the hallways and make sure they are clean and stuff like that."  (*Id.* at 8:3–14,

13:12–18.)  He also sweeps the hallways when necessary, and checks to see if repairs are needed

in the common areas of the building.  (*Id.* at 13:12–14:5.)  While Plaintiff is able to walk and is

not confined to a wheelchair, he has a dislocated hip and a two-and-a-half-inch height

differential between his two legs, a condition he has had since childhood.  (*Id.* at 26:12–27:19;

Def. 56.1[2] ¶ 17.)

---

[1] All references to "Perdum Tr." refer to Plaintiff's deposition in this case, attached by Defendants as Exhibit E to the Affidavit of Richard M. Freiman in Support of Defendants' Motion for Summary Judgment ("Frieman Aff.").  (*See* Dkt. 118-7 (defective copy); Dkt. 130 (full copy).)

[2] Citations to "Def. 56.1" refer to Defendants' Statement of Material Facts pursuant to Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York ("Rule 56.1 Statement").  (Dkt. 118-1 at 4–11.)  Local Rule 56.1 "requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. . . . If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003); *see also Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (A party's "failure to respond or contest the facts set forth [in the moving party's] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.") (quotation marks omitted).
In opposition to Defendants' motion, Plaintiff has filed a memorandum and accompanying affidavit (Dkts. 123, 124), but no counter-statement, as required under Rule 56.1. Therefore, where Defendant's Rule 56.1 Statement is cited and there is no contrary evidence in the record, the Court deems that fact to be undisputed and admitted.  *Compare Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the [56.1] Statements, the Court is free to disregard the assertion" and review the record independently.), *with Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."),

During the time period at issue in Plaintiff's claims, Plaintiff has owned and kept in New York at most three cars. His current car is a Chrysler Town and Country minivan ("the Chrysler"), which he has owned since at least March 15, 2011. (Perdum Tr. at 27:20–28:4, 71:11–20.) The Chrysler does not have "any special adaptations or equipment on it with respect to [Plaintiff's] alleged disabilities"; no modifications have been made to it; and it does not have a lift for a wheelchair. (*Id*. at 28:7–29:4.) Plaintiff also previously owned a conversion van, a Dodge Ram 1500 ("the Ram"), and a sedan, either a Ford Focus or a Ford Contour. (*Id*. at 30:8–19, 31:4–12, 31:19–22.)[3] No modifications, additions, or accessories were added to the Ram, though it was a high-top van. (*Id*. at 70:12–23.)

Plaintiff has parked "multiple times" outside a Pathmark grocery store located on Fort Greene Place ("the Street") in Brooklyn, New York. (Perdum Aff.[4] ¶¶ 5–6, 8.) The Pathmark

---

*and Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.") (quotation marks omitted). Any citations to Defendants' Rule 56.1 Statement incorporate by reference the documents cited therein unless otherwise noted.

[3] Plaintiff's testimony on his car ownership is inconsistent. Plaintiff testified that he purchased the Chrysler in 2008 or 2009, and prior to that, had a Ford Focus and the Ram, the latter of which he gifted away in 2004. (Perdum Tr. at 27:24–28:6, 30:15–31:3, 32:8–14.) However, Plaintiff also testified that he owned a Ford Focus and a Ford Contour, though he did not remember the precise time frame. (*Id*. at 31:4–12, 31:19–22.) Plaintiff testified that he had the Ford Contour at the same time as he had the Ram (*id*. at 65:12–14), but that he did not have the Ram at the same time he had the Chrysler (*id*. at 65:15–17).

[4] All references to "Perdum Aff." refer to the Affidavit of Jerome K. Perdum, Sr., in opposition to Defendants' summary judgment motion. (Dkt. 124.) Defendants argue that the Court should not consider Plaintiff's Affidavit or any of the other materials Plaintiff submitted with his opposition, for failure to comport with procedural rules. (Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Reply") (Dkt. 127) at 8–10.) But "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73. In the interests of justice, the Court has considered the factual assertions made in Plaintiff's affidavit that are within his personal knowledge, and the legal arguments, such as they are, made in Plaintiff's Opposition (Dkt. 123).

grocery store is part of a shopping center called the Atlantic Center Mall ("the Mall"), which is located at 625 Atlantic Avenue, Brooklyn, New York. (Perdum Tr. at 54:15–20; Def. 56.1 ¶¶ 1–2, 4; Harari Aff.[5] ¶¶ 9, 10.) Plaintiff has State- and City-issued disability placards in his car, which were "openly display[ed]" when he parked on the Street. (Perdum Aff. ¶¶ 5, 6; Perdum Tr. at 34:11–35:8, 37:22–38:7.) These placards do not permit him to park in a taxi stand. (Perdum Tr. at 36:23–37:17.) The Street is a private street that was "demapped"[6] by the City of New York in 1995 and is adjacent to the Mall. (Def. 56.1 ¶¶ 1–2, 4; Harari Aff. ¶¶ 9, 10.) Defendant Atlantic Center Fort Greene Associates ("ACFG") is the owner of the Mall and was granted a ground lease over the Street by the City of New York in August 1995, which permitted ACFG a right-of-way over the Street for the purpose of providing vehicular access to Mall patrons. (Def. 56.1 ¶¶ 3–5; Harari Aff. ¶¶ 7, 10, 11; Esemplare Tr.[7] at 9:5–11.) Defendant Forest City Ratner Companies ("FCRC") is a development company that developed the Mall, but never owned, leased, managed, maintained, or controlled the Street; nor did FCRC make any changes to any handicap parking on the Street. (Def. 56.1 ¶¶ 6–8; Esterman Aff.[8] ¶¶ 7–10;

---

[5] All references to "Harari Aff." refer to the Affidavit of Rachel M. Harari, Senior Vice President and Senior Counsel at Defendant First New York Partners Management ("FNYP"), in support of Defendants' summary judgment motion. (Dkt. 118-4.)

[6] The parties have not defined "demapping," nor does any definition appear in the record, but Defendants use the word synonymously with discontinuing and/or rendering private, or privately managed, a usage that appears consistent with the terms of the ground lease pertaining to the Street. (See Def. 56.1 ¶ 1; Harari Aff. ¶ 10; Harari Aff. Ex. 1 at 7, 16, 103 & Schedule A.)

[7] All references to "Esemplare Tr." refer to the deposition of JonPaul Esemplare, FNYP's Assistant Property Manager responsible for the Mall since May 2007. Both parties have attached Esemplare's deposition to their respective summary judgment papers. (See Dkt. 118-5; Dkt. 123 at ECF 8–59.) All page references to ECF refer to a document's pagination on the Electronic Case Filing ("ECF") system, rather than the document's internal pagination.

[8] All references to "Esterman Aff." refer to the Affidavit of David N. Esterman, Co-Director of Legal Affairs and previously Associate General Counsel at FCRC, submitted in

Esemplare Tr. at 15:9–15.)  FNYP is ACFG's managing agent for both the Mall and the Street. (Def. 56.1 ¶¶ 9, 10; Harari Aff. ¶ 6; Esemplare Tr. at 8:13–14, 9:2–4, 14:20–15:8, 18:5–16, 20:13–16.)  Throughout the time period relevant to Plaintiff's claims, FNYP contracted with an independent security company to provide security for the Mall and the Street.  (Def. 56.1 ¶ 13; Esemplare Tr. at 39:18–40:16.)  Plaintiff alleges that he parked "multiple times" outside the Pathmark, "always" at a designated handicapped parking area on the Street, indicated by a handicap insignia.  (Perdum Aff. ¶¶ 6, 8.)  Defendants, on the other hand, allege that there has never been any outdoor, public parking on the Street, and that the Street has always, at least during the time period relevant to Plaintiff's complaint, been designated as a taxi stand, which is operated by an independent cab company pursuant to a contract with ACFG, and serves as an area for pickups, deliveries, and emergency vehicles.  (Def. 56.1 ¶¶ 11, 12; Harari Aff. ¶ 12; Esemplare Tr. at 26:6–14, 27:22–28:13.)

On four dates in October and November 2010, Plaintiff was instructed by security personnel that he could not park on the Street, and that if he failed to move his vehicle, he would be towed.  (Perdum Tr. at 59:16–60:20.)  On those occasions, Plaintiff sometimes moved his car and other times did not, depending on "how [he] felt that day," whether he "felt they were harassing [him]," which Plaintiff defines as "telling [him] to move the car."  (*Id*. at 60:24–61:13.)  On March 15, 2011, Plaintiff received a parking ticket from the City while parked in the Chrysler on the Street.  (*Id*. at 63:6–64:4; 71:11–20.) Despite being ticketed, Plaintiff returned to the Mall at a later date to pick up medications from the Pathmark.  (*Id*. at 72:11–17.)  On April 4, 2012, Plaintiff received a trespass summons while parked on the Street, waiting for his wife, who

support of Defendants' motion for summary judgment.  (Dkt. 118-3.)  The Esterman Affidavit contains two paragraphs numbered "7"; any references to that paragraph refer to the second such paragraph.

was shopping in the Mall. (*Id*. at 72:11–20, 73:4–13.) Prior to being issued the summons, he was told to move his car, though the record does not indicate whether he was told by private security personnel or by police officers; it is undisputed that Plaintiff did not comply with this instruction. (*Id*. at 72:21–73:3.) Since being issued the trespass summons, Plaintiff has returned to the Mall, but has not parked on the Street, because he "didn't want to go through the hassle of the [security] guards again." (*Id*. at 81:24–82:10.) Instead, Plaintiff has parked in a location that he describes as "the Atlantic Avenue side." (*Id*. at 73:14–18, 82:6–10.)

Plaintiff has been told by several police officers not to park on the Atlantic Avenue side of the Mall. (*Id*. at 74:4–9.) The officers have directed Plaintiff to the Mall parking lot, which can be accessed from the Street. (*Id*. at 74:22–75:23.) On one such occasion,[9] Plaintiff "went into" the parking garage in his vehicle, and although signs indicated that there was handicap parking in the garage, Plaintiff "just made a U-turn" and "came right back out" because he felt claustrophobic. (*Id*. at 75:24–76:25.)

There is a two-level garage with 650 parking spaces beneath the Mall. There are 30 designated handicap parking spaces in the garage – 19 on the first level and 11 on the second.

---

[9] Plaintiff did not testify as to the date of his entering the parking garage, but because he testified, in effect, that he did so after receiving the trespass summons on April 4, 2012 (Perdum Tr. at 73:14–75:6), the Court presumes that Plaintiff entered the garage after that date.

Although Plaintiff claims to have informed the officers that "some handicap people have high tops and they can't park in the parking garage," the only car that Plaintiff owned that had a high top was the Ram, which Plaintiff never parked or attempted to park in the Mall's parking garage. (*Id*. at 76:2–77:10.) Plaintiff "recall[s] driving [the Ram] down to Atlantic Center" (*id*. at 68:10–21), but it is undisputed that he did not own both the Ram and the Chrysler simultaneously (*id*. at 68:2–9) and that, at least as of March 15, 2011, he owned the Chrysler, which is the car he owns currently (*id*. at 27:20–28:4, 71:11–20). The Chrysler does not have a high top. (*Id*. at 85:16–21.)

(Def. 56.1 ¶¶ 14, 15; Esemplare Aff.[10] ¶ 5; Esemplare Tr. at 20:17–24.)  These 30 handicap parking spaces are located next to the elevators at the entrance and exit points between the garage and the Mall, which is the shortest accessible route to the Mall.  (Def. 56.1 ¶ 16; Esemplare Tr. at 21:5–17; Esemplare Aff. ¶¶ 6, 7.)[11]  Prior to entering the garage, there is a sign indicating a clearance height of six feet, seven inches.  (Esemplare Tr. at 34:15–35:2.)

II.     Relevant Procedural History

Plaintiff filed this complaint, *pro se*, on January 20, 2011.  (Dkt. 1.)  Following the dismissal of two of the originally named Defendants, Pathmark Stores Inc. and Target Stores (Dkts. 23, 38), Plaintiff filed an amended complaint as to the remaining Defendants, FCRC, FNYP, and ACFG, on November 4, 2013 (Dkt. 65).  Plaintiff moved for judgment on the pleadings on December 9, 2013.  (Dkts. 74, 75.)  This motion, along with a number of others, was referred to the Honorable Viktor V. Pohorelsky on May 12, 2014, who recommended denying the motion for judgment on the pleadings on May 30, 2014.  (Dkt. 89.)  The Court adopted Judge Pohorelsky's Report & Recommendation in full on July 9, 2014.  Shortly thereafter, on August 5, 2014, Plaintiff retained counsel.  (Dkt. 99.)  Defendants filed the instant motion for summary judgment on May 8, 2015 (Dkt. 118), and in connection therewith, Plaintiff switched to his current counsel (Dkts. 120, 122, 126).

---

[10]  All references to "Esemplare Aff." refer to the Affidavit of JonPaul Esemplare, submitted in support of Defendants' motion for summary judgment.  (Dkt. 118-6.)

[11]  Plaintiff does not know whether there are handicap accessible parking spaces in the Mall's garage that provide access to the Pathmark and/or any other part of the Mall.  (Perdum Tr. at 82:22–83:4.)  Plaintiff similarly does not know how far any such handicap parking spaces are from the elevators that lead to the Pathmark.  (*Id.* at 83:23–84:3.)

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one part must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party will be insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation marks omitted) (alterations in original); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation") (quotation marks omitted); *see also Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008) (nonmoving party must offer "some hard evidence showing that its version of the events is not wholly fanciful") (quotation marks omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d

Cir. 2002) (quotation marks omitted) (emphasis in original).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

*DISCUSSION*

I.  <u>ADA</u>

Title III of the ADA prohibits discrimination against individuals on the basis of disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). To establish a claim under Title III, a plaintiff must prove: (1) that he is "disabled within the meaning of the ADA"; (2) that the defendants "own, lease, or operate a place of public accommodation";[12] and (3) that the defendants "discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

_____

[12] Defendants argue that Plaintiff's claims against FCRC must be dismissed because FCRC did not own, lease, or operate the Mall or the Street during the times at issue in Plaintiff's complaint. (Def. Mot. at 7–8.) Plaintiff has not rebutted this point as to FCRC; rather, Plaintiff addresses only Defendants ACFG's and FNYP's relationship to the alleged public accommodations at issue. (*See* Pl. Opp. at ECF 3–4.) Indeed, the deposition testimony to which Plaintiff's Opposition cites makes clear that, during the time period relevant to Plaintiff's claims, FCRC was only the developer of the Mall, not the owner, lessor, or operator, and that it had no ongoing construction projects in the Mall. (Esemplare Tr. at 15:9–15, 16:25–17:3, 17:16–18.) Therefore, particularly given that Plaintiff is now represented by counsel, the Court deems Plaintiff as having abandoned his claims against Defendant FCRC. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (finding it "appropriate," particularly where plaintiff is

A.     Plaintiff's Alleged Disability

Defendants contest Plaintiff's assertion that he is, in fact, disabled within the meaning of the ADA.  (Def. Mot. at 19–20.)  The ADA's definition of disability, which applies to all Titles of the ADA, stipulates that an individual is disabled if he has "'a physical or mental impairment that substantially limits one or more of [his] major life activities,'" if he has "'a record of such an impairment,'" or if he is "'regarded as having such an impairment.'"  *Widomski v. State Univ. of N.Y.*, 748 F.3d 471, 474–75 (2d Cir. 2014) (quoting 42 U.S.C. § 12102(2)).   To determine whether a plaintiff has a disability under the ADA, courts employ a three-step analysis:  (1) determine whether the plaintiff has an impairment; (2) identify the life activity upon which the plaintiff relies and determine whether it constitutes a "major life activity" within the meaning of the ADA; and (3) determine whether the impairment has substantially limited that activity.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  "In order to be eligible to prevail upon a further showing of discrimination," the plaintiff must satisfy each of these three prongs.  *See Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998).

Although Plaintiff fails to put forth evidence of his alleged disability,[13] a doctor's letter proffered by *Defendants* indicates that Plaintiff was diagnosed in August 1995 as having "lumbar scoliosis with spinal stenosis" and a "left lower extremity [that] is shorter" with a "loosening" of

---

represented by counsel, to "infer from [plaintiff]'s partial opposition that [the] claims . . . that are not defended have been abandoned").
    All references to "Def. Mot." refer to Defendant's Memorandum of Law in Support of Defendants' Motion for Summary Judgment.  (Dkt. 118-2.)  All references to "Pl. Opp." refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. (Dkt. 123 at ECF 1–7.)

[13] In his affidavit accompanying his Opposition to summary judgment, he states only that he is "disabled" (Perdum Aff. ¶ 11), and argues in his Opposition merely that he "is a disabled man," citing to a "Dr.'s note finding total disability of Plaintiff," which Plaintiff himself does not attach (Pl. Opp. at ECF 4).

a "component of the left total hip."  (Exh. H to Freiman Aff. (Dkt. 118-10) at ECF 12–13.)

Plaintiff was determined, at that time, to be "totally disabled," because of his inability "to walk

for prolong [sic] periods or stand" and "difficulty in sitting."  (*Id.*)  Plaintiff himself alleges that

he has been "disabled all of [his] life" as a result of "a dislocated hip" and a "two-and-a-half inch

difference in one leg."  (Perdum Tr. at 26:15–27:14.)

The Court finds that this evidence is sufficient to create a triable issue of fact regarding

whether, at the time of the incidents at issue in this case, Plaintiff was disabled within the

meaning of the ADA.  A jury could find, on the one hand, that Plaintiff's condition constitutes a

"physical impairment," as it appears to be a physiological condition affecting Plaintiff's

musculoskeletal system, and walking, standing, and sitting all constitute major life activities.

*See Colwell*, 158 F.3d at 642.  On the other hand, the jury might find that a 15-year-old diagnosis

provides "no support for the idea that [Plaintiff's] impairments would be significantly limiting to

the average person in the general population," as is required under the ADA.  *Id.* at 644

(quotation marks omitted).  Furthermore, Plaintiff is able to "go up [] steps" in a four-story

brownstone he owns "[t]o check the hallways and make sure they are clean," and "[s]ometimes

[he] sweep[s]" the hallways.  (Perdum Tr. at 8:3–14, 13:12–24.)  Plaintiff owns and operates his

own car, which does not have any "special adaptations or equipment on it with respect to [his]

disabilities."  (*Id.* at 27:20–28:13.)  *Cf. Brower v. Continental Airlines, Inc.*, 62 F. Supp. 2d 896,

903–04 (E.D.N.Y. 1999) (finding plaintiff with "degenerative foot condition" who "submitted an

expert's report that stated that the current state of her feet will not allow any extended walking or

standing" not to be disabled, as condition did not "substantially limit" major life activity)

(quotation marks omitted).[14] Thus, the Court finds that Plaintiff has met, if barely, his burden at this stage of creating a disputed issue of fact as to his disability. *See Hayut*, 352 F.3d at 743 (more than a mere "scintilla of evidence" required to defeat summary judgment).

## B. Plaintiff's Claims of Discrimination

Despite the factual dispute regarding Plaintiff's disability, Defendants are nonetheless entitled to summary judgment because Plaintiff has failed to show any genuine issue of material fact regarding his standing to assert the discrimination claims at issue here. (*See* Def. Mot. at 15–19.)

At the summary judgment stage, a court cannot merely rely on the allegations in a plaintiff's complaint to establish standing; rather, "[t]o defend against summary judgment for lack of standing, a plaintiff 'must set forth by affidavit or other evidence specific facts' supporting standing, as is generally required under Rule 56." *NRDC, Inc. v. U.S. FDA*, 710 F.3d 71, 79 (2d Cir. 2013); *see also Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006) ("[A]t the summary judgment stage the plaintiff[] need not establish that [he] in fact ha[s] standing, but only that there is a genuine question of material fact as to the standing elements.") (quotation marks omitted). Here, Plaintiff has failed to adduce sufficient evidence upon which a reasonable jury could find standing.

To satisfy constitutional standing requirements, there must be (1) a concrete and particularized, actual or imminent injury in fact to the plaintiff, (2) a causal connection between that injury and the defendants' conduct, and (3) redressability of that injury by a favorable

---

[14] That Plaintiff has been issued placards permitting him to park in handicap-accessible parking spots, (Perdum Tr. at 34:11–35:8, 36:23–37:17), provides little, if any, support for his claim of disability because a locality's "decision to allow an individual to park in a handicapped designated spot is in no way equivalent to a finding that Plaintiff is disabled within the meaning of the ADA," *Pinto v. Massapequa Pub. Schools*, 820 F. Supp. 2d 404, 409 (E.D.N.Y. 2011).

decision.[15] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). What constitutes an injury in fact under the ADA is that the plaintiff has "personally encounter[ed] the barrier to access complained of, or [] has actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier." *Panzica v. Mas-Maz, Inc.*, No. 05-CV-2595, 2007 U.S. Dist. LEXIS 42171, at *7 (E.D.N.Y. June 11, 2007); *see also Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518, 2003 U.S. Dist. LEXIS 5145, at *21 (S.D.N.Y. Apr. 1, 2003) ("Courts considering ADA claims have found that disabled plaintiffs who had encountered barriers at restaurants, stores, hotels, or stadiums prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place *but for* the barriers to access.") (emphasis added). *Cf. Shariff v. Radamar Meat Corp.*, No. 11-CV-6369, 2014 U.S. Dist. LEXIS 44763, at *5–6 (E.D.N.Y. Feb. 14, 2014), *adopted in relevant part*, 2014 U.S. Dist. LEXIS 44029 (E.D.N.Y. Mar. 28, 2014) (sufficient facts to confer standing where plaintiff, who "is paralyzed, cannot walk, and uses a wheelchair," alleged that he "twice went to defendant's store, and encountered barriers in defendant's parking lot each time").[16]

Construed generously, Plaintiff's submissions present two alleged "barriers" that Plaintiff contends establish his injury in fact: (1) "harassment" directed at him by security guards instructing him not to park on the Street and the criminal trespass summons ultimately issued to

---

[15] This third element of standing, redressability, is not contested (Def. Mot. at 19), and therefore the Court has not addressed it.

[16] Plaintiff's cited authority, *Warth v. Seldin*, 422 U.S. 490 (1975), is not to the contrary. (*See* Pl. Opp. at ECF 4–5.) In fact, that case makes clear that "[a] federal court's jurisdiction [] can be invoked *only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . .*" *Warth* at 499 (quotation marks omitted) (emphasis added).

him for parking on the Street[17] (*see* Perdum Aff. ¶¶ 9, 10); and (2) the low vertical clearance at the Mall parking garage, which allegedly fails to meet ADA requirements and prevents entry by handicap-accessible vans (Pl. Opp. at ECF 4–6). The Court finds that Plaintiff has failed to create any factual dispute about whether these purported barriers qualify as such under the ADA or that either alleged barrier caused him injury that can be remedied under the ADA.

### 1. First Barrier: Harassment and Trespass Summons

As an initial matter, Plaintiff has established no injury-in-fact because the alleged "harassment" to which Plaintiff contends he was subjected is not a cognizable "barrier to access" under the ADA, as it only prevented Plaintiff from parking on the Street and not from accessing the public accommodation itself, namely the Pathmark or the Mall.[18] *See, e.g.,* 28 C.F.R. §

---

[17] Plaintiff argues that he only encountered this first barrier "as a result of the discriminatory barriers to access in the parking lot" (Pl. Opp. at ECF 4), which is Plaintiff's second asserted barrier and the focus of his argument in opposition to summary judgment.

[18] To the extent Plaintiff's argument centers on his inability to access the Street itself, this claim, too, must fail. As an initial matter, Plaintiff has not defended this claim on summary judgment, focusing his argument entirely on alleged "discriminatory barriers to access in the parking lot" instead. (Pl. Opp. at ECF 4; *see also id.* at ECF 5 ("Conditions which[] do not allow for access by a handicap accessible van are, as a matter of law, sufficient to entitle the plaintiff to relief."); *id.* at ECF 6 (discussing ADA requirements for "handicap van accessibility," including vertical clearance, which Plaintiff alleges is insufficient in the Mall's parking garage).) Plaintiff's failure to defend this claim constitutes abandonment, which, alone, justifies dismissal of this claim. *See Jackson*, 766 F.3d at 198.

In addition, it is far from clear that the Street is a "place of public accommodation" to which the ADA's requirements apply. The ADA defines a "public accommodation" as a private entity whose operations affect commerce and fall into certain enumerated categories, including "place[s] of lodging," "establishment[s] serving food or drink," "place[s] of exhibition or entertainment," "place[s] of public gathering," "sales or rental establishment[s]," "service establishment[s]" such as laundromats, dry-cleaners, banks, and gas stations, "station[s] used for specified public transportation," "place[s] of public display or collection," "place[s] of recreation," "place[s] of education," "social service center establishment[s]" such as homeless shelters and food banks, and "place[s] of exercise or recreation." 42 U.S.C. § 12181(7). Plaintiff has cited nothing, nor has this Court found anything, to suggest that the Street would fall into any of these enumerated categories. Even to the extent that the Street's designation as a taxi stand might make it a public accommodation, that is not the public accommodation to which Plaintiff

36.206(b) (2016) (violation of ADA for private entity to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any rights granted or protected by [the ADA]"); *id.* § 36.206(c) (prohibited conduct includes "[c]oercing an individual to deny or limit the benefits, services, or advantages to which he [] is entitled under the [ADA]" and "[t]hreatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation"); Dep't of Justice, App'x C to Part 36, Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and In Commercial Facilities, 28 C.F.R. § 36.206 ("[I]t would be a violation of the [ADA] . . . for a private individual, e.g., a restaurant customer, to harass or intimidate an individual with a disability in an effort to prevent that individual from patronizing the restaurant.").

More fundamentally, the alleged harassment cannot create a genuine issue of fact as to Plaintiff's standing, because it did not deter or prevent Plaintiff from visiting the Mall or the Pathmark, which is in the Mall. Plaintiff testified that he has "been back to the Atlantic Center mall since the summons" was issued, but that he "parked on the Atlantic Avenue side because [he] didn't want to go through the hassle of the guards again." (Perdum Tr. 81:24–82:10.) In other words, Plaintiff has not been deterred from returning to, or prevented from accessing, the

---

claims he was denied access. (*See* Def. 56.1 ¶¶ 11, 12; Harari Aff. ¶ 12; Esemplare Tr. at 26:6–14, 27:22–28:13 (Street was designated a taxi stand).) Rather, Plaintiff's claim is that by not being allowed to park on the Street, he was denied access to the Pathmark and the Mall, which are public accommodations under the ADA.

Furthermore, even construing the Street, *qua* taxi stand, as a public accommodation, it is undisputed that Plaintiff had access to it – *e.g.*, to get a cab – despite not being allowed to park on it. (Dkt. 65 at ECF 28 (listing places where disabled parking permit holders "may not park," including taxi stands); *see also* Perdum Tr. at 36:23–37:17 (Plaintiff acknowledging that, even with his Special Parking Identification Permit, he was not allowed to park at taxi stands).)

Mall; rather, he has chosen to park in a different location while accessing the Mall so as to not be told that he is not permitted to park on the Street.

Even though Plaintiff may have stopped using the Pathmark pharmacy after receiving the criminal trespass summons (*id.* at 54:15–55:14), he proffers no evidence, nor does any exist in the record, establishing that Defendants issued that summons, nor the parking ticket that preceded it. The ADA requires Plaintiff to prove that *Defendants* discriminated against him based on his disability. *Roberts*, 542 F.3d at 368. Yet, the evidence in the record, which Plaintiff does not dispute and has not countered with other evidence, makes clear that Defendants do not have authority to issue either parking tickets or criminal summonses. (Perdum Tr. at 63:11–22 (March 15, 2011 parking ticket issued by the City); Esemplare Tr. at 40:2–41:25 (security guards are "not direct employees" of Defendants and "can't issue tickets").)[19] A copy of the "*criminal* trespassing summons" (Perdum Aff. ¶ 9 (emphasis added)) attached to Plaintiff's complaint makes clear that the ticket was issued by the City, not by Defendants. (*See* Dkt. 65 at ECF 29–30 (ticket labeled "CRIMINAL COURT – CITY OF NEW YORK" and "The People of The State of New York VS. [Plaintiff]").) Because Plaintiff has demonstrated no genuine issue of material fact regarding a cognizable injury that resulted from conduct attributable to Defendants, this alleged basis for standing is insufficient at the summary judgment stage.

---

[19] Although Plaintiff testified that security guards "had a patrol officer [] give [him] a [no parking] ticket" for parking on the Street (Perdum Tr. at 61:14–20), this does not suggest that the security guards, even if they could be seen as Defendants' agents, were responsible for the issuance of the *trespass summons*, which is the only conduct that Plaintiff's testimony remotely suggests deterred him from returning to the Pathmark (*id.* at 54:15–55:14).

## 2. Insufficient Vertical Clearance to Enter the Garage

The second barrier that Plaintiff asserts, which is the focus of his arguments in opposing summary judgment, is the purported physical barrier to accessing the parking garage underneath the Mall. Despite claiming that the vertical clearance to enter the parking garage is less than required by the ADA and prevents handicap accessible vans from entering the garage, Plaintiff simply offers no evidence that he has standing to assert a claim based thereon. The record evidence makes clear that, on the day he attempted to enter the garage, he was not driving a high top handicap-accessible van. *See supra* n.9. Indeed, Plaintiff testified at his deposition that he was, in fact, *able* to enter the parking garage, but exited immediately thereafter, not because of vertical clearance issues, but because he suddenly felt claustrophobic. (Perdum Tr. at 75:24–76:25.) Claustrophobia is not the basis of Plaintiff's alleged disability, nor has it been the basis of any medical treatment from any of Plaintiff's health care providers. (*Id*. at 98:14–21.)[20]

Indeed, the only evidence in the record indicates that Defendants have, in fact, provided handicap access to the Mall and the Pathmark, at a minimum, by designating 30 handicap-accessible parking spots in the Mall's garage, which are divided between the garage's two levels. (Def. 56.1 ¶¶ 14, 15; Esemplare Aff. ¶ 5; Esemplare Tr. at 20:17–24.). These handicap-accessible parking spots are located directly adjacent to the elevators that take patrons into the Mall, including directly into the Pathmark. (Def. 56.1 ¶ 16; Esemplare Tr. at 21:5–17; Esemplare Aff. ¶¶ 6, 7; *cf*. Perdum Tr. at 83:23–84:3.)

---

[20] Even were this the alleged disability underpinning Plaintiff's ADA claims in this action, Defendants would still be entitled to summary judgment, as Plaintiff "has not put forward any credible, admissible evidence of the extent of [any claustrophobia] symptoms that would allow the Court to determine whether they are severe enough to substantially limit [his] ability to engage in a major life activity" sufficient to qualify as a disability within the meaning of the ADA. *See Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08 Civ. 5454, 2011 U.S. Dist. LEXIS 113073, at *17–18 (S.D.N.Y. Sept. 30, 2011).

Thus, the undisputed evidence in the record demonstrates that Plaintiff was undeterred from accessing the Mall, and to the extent he was deterred from accessing the Mall through the garage, if at all, he was deterred by his own claustrophobia and not by the garage's vertical clearance. The undisputed evidence further demonstrates that Plaintiff himself was unaffected by any alleged height defect plaguing the Mall's parking garage, as he is not bound to a wheelchair, which would require the use of a handicap-accessible van (Perdum Tr. at 8:3–14, 13:12–14:5, 26:12–27:19), nor was he ever unable to access the garage due to the alleged height defect (*id*. at 75:24–76:25). "[I]ndividual disabled plaintiffs have standing to challenge all discriminatory conduct that they have knowledge of *and [a]ffects their individual disability or disabilities*." *Access 4 All, Inc.*, 458 F. Supp. 2d at 174 (emphasis in original). Where, as here, "the alleged violation does not affect [Plaintiff's] disability, [he] is not injured and therefore has no standing to bring suit." *Id*.; *see also Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013) (standing extends only to "barriers on the premises *that affect the plaintiff's particular disability*") (emphasis added).[21] Because Plaintiff has failed to present any genuine issue of material fact that his second barrier, the alleged vertical clearance defect of the Mall's garage, actually affected Plaintiff's disability, and that he suffered any actual injury, Defendants are entitled to summary judgment on Plaintiff's ADA claims.

---

[21] Plaintiff's cited authority is inapposite. Contrary to Plaintiff's representations, it does not stand for the proposition that the mere existence of alleged barriers to access are "sufficient to entitle the plaintiff to relief." (Pl. Opp. at ECF 5–6.) Rather, in the case cited by Plaintiff, the Magistrate Judge, despite finding that the plaintiffs had failed to show that they were "qualified individuals with disabilities" at the preliminary injunction phase, recommended that the case move forward for "further factual development" based on the plaintiffs' allegation that the defendant correctional facility's lack of a handicapped accessible van had prevented the plaintiffs from attending court and/or medical appointments. *Burroughs v. Cty. of Nassau*, No. 13-CV-6784, 2014 U.S. Dist. LEXIS 79224, at *2, *27–28, *31 (E.D.N.Y. Mar. 19, 2014), *adopted in full*, 2014 U.S. Dist. LEXIS 79006 (E.D.N.Y. June 9, 2014). Here, the parties have engaged in factual development, and the record presents no genuine issue of material fact as to whether the barriers on which Plaintiff now bases his ADA claims affected Plaintiff's own disability.

## II.    New York State Law Claims

The Court turns to Plaintiff's remaining State law claims.  Because Plaintiff was *pro se* at the time of filing his amended complaint, the Court construes his pleadings liberally to allege violations of New York's Civil Rights Law and New York City's Human Rights Law.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008).  However, the Court declines to exercise supplemental jurisdiction over these claims, given its dismissal of all claims over which the Court has original jurisdiction.  *See Carter v. City of N.Y.*, No. 14-CV-7165, 2015 U.S. Dist. LEXIS 174124, at *55–56 (E.D.N.Y. Dec. 11, 2015), *adopted in full by*, 2016 U.S. Dist. LEXIS 2847 (E.D.N.Y. Jan. 6, 2016) (after dismissing "all federal claims in th[e] action," "declining to exercise supplemental jurisdiction over the [State law] claims and dismissing the same without prejudice"); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147–48 (E.D.N.Y. 2015) ("declin[ing] to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment").

## *CONCLUSION*

For the reasons stated above, Defendants' motion for summary judgment is GRANTED.  Plaintiff's ADA claims are dismissed, with prejudice, and Plaintiff's remaining New York State and City claims are dismissed, without prejudice.  The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.

SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: March 28, 2016
      Brooklyn, New York